IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

C.S. MCCROSSAN CONSTRUCTION
CO., INC.,

        Plaintiff,

v.                              No. CIV 95-1345 JP/JHG

JAN A. COOK, et al.,

        Defendants.

## MEMORANDUM OPINION

The parties filed cross-motions for summary judgment. Defendants moved the Court for summary judgment on the ground that Plaintiff is not eligible to participate in the Small Business Administration 8(a) program, 15 U.S.C. § 637(a), for race-neutral reasons and therefore lacks standing under the standards set forth in *Wilson v. Glenwood Intermountain Properties*, 98 F.3d 590 (10th Cir. 1996) and *Cache Valley Electric Co. v. State of Utah Dep't of Transportation*, 149 F.3d 1119 (10th Cir. 1998), *cert. denied,* 119 S.Ct. 1333 (1999).[1] On the other hand, Plaintiff's motion for summary judgment challenged the constitutionality of a solicitation for the federal procurement of construction work at White Sands Missile Range (WSMR). Plaintiff contends that as a matter of law the challenged 8(a) program will not survive strict scrutiny.[2] Having reviewed the motions, the memoranda in support and in opposition, and the relevant law,

---

[1] Defendants brought this supplemental authority to the Court's attention after the parties had filed their cross-motions for summary judgment.

[2] In its April 2, 1995 Memorandum Opinion and Order, the Court set forth the factual background of this action and described the procedure by which a business qualifies to participate in the 8(a) program.

the Court finds that Defendants' motion should be granted and Plaintiff's motion should be denied

This memorandum opinion revisits the issue of Plaintiff's standing to challenge the constitutionality of a solicitation and award of a contract by the United States Army for construction work at WSMR.[3] On December 6, 1995, Plaintiff filed its motion for a preliminary injunction. At that time, the Court determined that Plaintiff had standing to challenge the 8(a) program under *Adarand Constructors, Inc. v. Pena*, 115 S.Ct. 2097 (1995) and *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993). Since then the Court of Appeals for the Tenth Circuit has shed more light on this issue and has clarified the standards for evaluating standing in cases such as this.

To establish standing, a plaintiff must demonstrate that continued use of set-asides constitutes "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Adarand*, 115 S.Ct. at 2104 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The injury in cases of this kind is that a 'discriminatory classification prevents the plaintiff from competing on an equal footing.'" *Id.* at 2105 (quoting *Jacksonville*, 508 U.S. at 667). "The aggrieved party 'need not allege that he would have obtained the benefit but for the barrier in order to establish standing.'" *Id.* Therefore, to establish standing a party challenging a set-aside program need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis. *Jacksonville*, 508 U.S. at 666.

---

[3] The challenged contract is referred to as a "job order contract." A job order contract is a requirements contract for multiple projects, including real property maintenance, repair, and minor construction work. App. A, Cook Decl. ¶ 5. The contract does not specify the exact amount of services and supplies at the time of the award, however, that is determined during the life of the contract through issuance of individual delivery orders. *Id.*

2

"Second, there must be a causal connection between the injury and the conduct complained of– the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*

Defendants argue that under *Wilson* Plaintiff cannot satisfy any of the three elements, expecially that its alleged injury would be redressed by a favorable decision. In *Wilson*, the Court of Appeals for the Tenth Circuit found that "[p]laintiffs claiming discrimination in the denial of a benefit need not show they would have obtained the benefit in the absence of the discrimination to establish standing; it [was] enough to show the discrimination deprived them of the ability to compete for the benefit on an equal footing." *Wilson*, 98 F.3d at 593 (citing *Jacksonville*, 508 U.S. at 666-668 and *Adarand*, 115 S.Ct. at 2104-05). The Court of Appeals further noted, however, that "a person who fails to satisfy **lawful, nondiscriminatory requirements or qualifications** for the benefit lacks standing to raise claims of discrimination in the denial of the benefit." *Id.* (emphasis added). The Court of Appeals reasoned that when discrimination did not deprive the person of the ability to compete because the person was disqualified from competing for another, legitimate reason, a favorable decision on the discrimination claim could not redress the injury because the person would still be disqualified from competing. *Id.*

In *Wilson*, nonstudents brought an action against landlords, alleging the landlords violated the Fair Housing Act by providing and advertising gender-segregated housing to students of Brigham Young University. The Court of Appeals held that, as nonstudents, plaintiffs did not

3

have standing to bring the gender discrimination claims because even in the absence of the challenged gender discrimination they would not have qualified to rent the student apartment. Therefore, the Court of Appeals found that Plaintiffs had not shown the required causal relationship or the likelihood that a favorable decision would redress the injury in order to establish standing.

In a more recent opinion in a case factually similar to this action, the Court of Appeals for the Tenth Circuit, in *Cache Valley Electric Company v. State of Utah Dep't of Transportation*, 149 F.3d 1119 (10th Cir. 1998), *cert. denied*, 119 S.Ct. 1333 (1999), also held that plaintiff lacked standing to challenge a government program which required that a certain percentage of federal highway funds be expended on disadvantaged businesses. The government program in question also presumed that certain racial groups and women were disadvantaged.

The federal program in question in *Cache Valley* was the Disadvantaged Business Enterprise (DBE) program. Under the DBE, the United States Department of Transportation has a policy to expend "not less than 10 percent of the amounts authorized to be appropriated" for certain federal highway programs "with small business concerns and controlled by socially and economically disadvantaged." *Cache Valley,* 149 F.3d at 1121 (quoting Intermodal Surface Transportation Efficiency Act of 1991, Pub.L. No. 102-240, § 1003(b)(1), 105 Stat. 1914, 1919 (1991) and the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. 100-17, § 106(c)(1), 101 Stat. 132, 145 (1987)).

To qualify to participate in the DBE program, a business must be both small and owned and controlled by socially and economically disadvantaged individuals. *Id.* Any entity with average annual gross receipts over the preceding 3 fiscal years exceeding $16,600,000 would be

disqualified. *Id.* Moreover, the program defines "socially and economically disadvantaged" in accordance with § 8(d) of the Small Business Act, the same definitions used by the challenged program in this case. Additionally, individuals who are members of certain racial groups and women are presumptively socially disadvantaged. This presumption is rebuttable. However, the burden is on the challenging party. *Id.* Entities not entitled to a presumption of social and economic disadvantage may nonetheless attain DBE status by satisfying the race- and gender-neutral criteria established in the regulations. *Id.*

Plaintiff, Cache Valley Electric Company, was not owned by members of groups presumed to be disadvantaged and the company could not qualify as a DBE because its gross revenues exceeded the statutory limit to qualify as a small business. In 1995, the Utah Department of Transportation (UDOT) solicited bids on two separate projects. Plaintiff submitted the lowest bid for the electrical work. The prime contractor, however, selected the next lowest bid in order to meet the DBE percentage goal. Subsequently, Plaintiff filed its lawsuit in federal district court seeking a declaration that the DBE program was unconstitutional and an injunction prohibiting UDOT from presuming certain minority groups to be socially and economically disadvantage. The district court ruled that plaintiff lacked standing to bring the action.

The Court of Appeals affirmed the district court's ruling. Although the Court of Appeals found that plaintiff had established "injury in fact" and that it was "fairly traceable" to the DBE program and its race and gender preference, the Court held that "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way." *Id.* at 1123. The Court of Appeals arrived at this conclusion for

the following reasons: (1) the disputed preferences were severable from the rest of the DBE program and therefore the program would remain viable even absent those preferences; and (2) the plaintiff had failed to present evidence that the elimination of the preferences would result in any meaningful reduction in the number of qualifying DBEs. *Id.* Finding that "any anticipated redress from a favorable decision [was] wholly speculative," the Court of Appeals concluded plaintiff lacked standing. *Id.*

In analyzing the severability issue, the Court of Appeals found that the legislative history of the Small Business Act and of the Intermodal Surface Transportation Efficiency Act indicated that the presumption was severable from the rest of the DBE program. Because the statute allowed a small business to qualify as "socially and economically disadvantaged" by satisfying race- and gender-neutral criteria, the Court of Appeals rejected plaintiff's claim that socially and economically disadvantaged individuals were necessarily minorities. *Id.* Moreover, because Plaintiff failed to "to show at a bare minimum that the practical effect of eliminating the presumption would be some meaningful reduction in the number of contracts awarded to DBEs against which it would be forced to compete," the Court of Appeals concluded plaintiff had failed to demonstrate that a favorable judicial determination would "likely" improve the terms of competition it faced. *Id.*

With this standard in mind, this Court finds that, like the plaintiff in *Cache Valley,* Plaintiff C.S. McCrossan Construction Co., Inc. lacks standing to bring this action. Although Plaintiff has established "injury in fact" which is "fairly traceable" to the challenged presumption, Plaintiff has failed to show that a favorable decision by this Court would redress its alleged injury. It is undisputed that Plaintiff is a large entity with annual receipts in fiscal year 1995 between $50 and

6

$75 million. App. D, Dep. of C.McCrossan at 24. Therefore, Plaintiff cannot qualify as a small business. Additionally, the net worth of its owner, Charles McCrossan, has exceeded $250,000 for the last ten years. Consequently, Plaintiff would not qualify to participate in the 8(a) program because it is not a small business and does not satisfy the economic criteria, both race-neutral standards.

Plaintiff also has failed to provide the Court with any evidence that any 8(a) program participants would be disqualified as a result of eliminating the challenged presumption thus improving "the terms of competition it faces." Accordingly, Defendants' motion for summary judgment will granted and Plaintiff's cross-motion will be denied.

A summary judgment in accordance with this memorandum opinion will be entered.

**JAMES A. PARKER**
**UNITED STATES DISTRICT JUDGE**